We'll call the next case, please. Mr. Peter. Your Honors, Mr. McClintock, Ms. Steele. First, I'd like to start off by clearing up a matter where counsel stated that he felt we tried to mislead the court on the trial court. That didn't happen. I'll just call your attention if the court has any question about that. Judge Heddle states at RP 392 in his ruling, in this case, I think the facts are clear that Center Street is an abode of Ms. Foster's. We further discuss that at page 13 and 15 of our brief, but the judge said in looking at the case that the documentary evidence is strong and that the defendant is the most credible witness. It's certainly the strongest evidence submitted to support her abode being found at Center Street. And in another place in the case, excuse me, the judge does misstate and confuse the two streets that are in question, Center Street and Main Street. It's our position her abode is Center Street. Later on, he does make a mistake and he corrects himself. But at the point that we're talking about, there isn't a misstatement. He definitely explains what he intended to say there, that he found out one of her abodes to be Center Street. We look at the judge's ruling. The judge in his ruling, he contradicts the evidence which he considers to be the strongest, the evidence of the defendant and her documentary evidence. And considering the totality of his ruling, that Main Street is her abode is against the manifest weight of the evidence of the very evidence that he found to be the most conclusive, the testimony of the defendant as to where she resided and also her documentary evidence. In this case, the judge says that the evidence supports Center Street, but then he rules against Center Street being her abode and comes up with another abode, two abodes, also the abode being Main Street. In this case, we have the questions of fact which the judge decided. We believe he's decided against the manifest weight of the evidence, but we also have the issues of the credibility of the witnesses which the judge decided. And in this case, the judge decided that the defendant was the most credible witness testifying in the case. And then he went on to comment about the quality and the legitimacy of her evidence. The legal standard in determining the usual place of abode is a standard of where do you have continuous, intimate, significant contacts with the residents. The judge went on and said he had a different standard. And that standard is not supportive of any of the case law. The judge used the standard of determining usual place of abode of where you can be found. That certainly is a different standard and it's a lesser standard than what actually shows what's one's usual place of abode. So if the judge finds that she is the most credible witness, he finds that her evidence is the most credible, the documentary evidence is credible, how does she lose? She loses because he ruled against the manifest weight of the evidence and also because he applied the wrong legal standard. Where can you be found? When he improperly defines the usual place of abode where you can be found in the most general terms, the judge said he was speaking purely off the cuff and not from the case law. He made that comment in court and you can see that. The law requires determining the usual place of abode of not just where you have transient contacts. It's where you have these continuous, intimate, ongoing contacts. The judge did not use the usual place of abode standard. In fact, he never refers to the term usual place of abode. He consistently refers to abode. And so he's using a lesser standard as he's considering in determining where her usual place of abode is. Again, saying that it's where you can be found. A place where you merely can be found is not the proper standard. And when you look at what was proven in this case, the credible evidence that the judge indicates the defendant showed, it's where did she shower? Where did she sleep? Where did she keep her personal items, such as her makeup? What did her public documents contain as being her usual place of abode? Where did she treat the place where she resided being her home? Where was she doing and where did she list her banking, her checks? What more public statements other than that as to where your usual place of abode is, would you put on your checks? The judge, in looking at the evidence that the defendant brought in, where her usual place of abode had questions about it. For example, they brought in a landlord and the landlord said, well, she came in and she rented, her ex-husband came in, they rented some property, the children were living there, she paid the rent. But the judge stated that he viewed the landlord's testimony with question. He wasn't placing much credibility on the landlord because I think the landlord was severely impeached in respect to his observations as to whether or not she was at the Main Street address. As far as the evidence that the judge very strongly said supported Center Street as being her usual place of abode were such things as her checks, her driver's license, her voter's card. These were things that she had kept for years and they continuously said that Center Street was her abode. These are very public documents. The rental agreement that the plaintiff stresses should be given attention or should be given more weight is really kind of a red herring because, and the judge acknowledged it as being a red herring. She was divorced from her husband and the children resided with him. In order to have a place for them to live because her ex- husband had miserable credit, she signed leases and she paid the rent. She paid the rent in lieu of child support. And the court acknowledged that. The judge says he accepted the defendant's testimony that she did not live at Main Street even though she was paying rent for her children to stay there and signed the lease. He understood why she did it and the judge, again, said she found her to be credible. The judge finding her to be credible and then ruling against her, he established what she found to be credible such as her testimony that she resided at Center Street. Her testimony that she never lived at Main Street. She never slept at Main Street. Her personal belongings weren't kept at Main Street but were kept at Center Street. She ate her meals at Center Street. Center Street is where she called her home. In addition, she also submitted documents such as an order of protection that she went to court and got a few days before her mother had passed away wherein she listed not Center Street, excuse me, not Main Street as her address. She went to court and got this order of protection and publicly stated, Main Street is not my address. Also, her mother's death certificate indicated that Main Street was not her address. The defendant presented a lot of her usual place of abode. I don't think there could be two usual places of abode. I think you can maybe possibly have more than one abode, but if you look at the definition of usual place of abode, and that's the standard outline in the Supreme Court rule, it's a place where you're going to have those continuous contacts, not contacts with merely a transient basis, intimate contacts, continuous contacts over an extended period of time. There's no evidence that this woman ever slept at the Main Street address. In all the cases that seem to deal with this issue, the person, when you're looking at what is their usual place of abode, they sleep there. In this case, there's no sleeping there. She is there, her children are there, and no one's denying that she had Main Street. But at the same time, it didn't rise to the level of her usual place of abode. Now, the judge looked at it and says a place where you can be found. Well, you can be found at a tavern, and if you're not sleeping at the tavern, that's certainly not going to be a residence. And it's trivial, but at the same time, you can be found at a lot of places. You may be found at your local club. You may be found at your girlfriend's home regularly, but that doesn't make it your residence. She wasn't sleeping there. There's no evidence that she was sleeping there. Who's in a better position to tell the court and testify what's her usual place of abode? The defendant. And if you believe the defendant and you find the defendant credible, it's pretty hard to rule against the defendant unless you're going to rule against the manifest way to the evidence. And then you take that testimony, which indicates credible, and then you look at the documentary evidence that's submitted, which you find as being very convincing. How do you rule against the defendant who established that? Also, though, we also brought in some additional evidence. We brought in her father, who also lived with her at Center Street, his girlfriend, Sylvia Johnson. She came in and testified. Now, she's got really intimate knowledge of what's going on inside her boyfriend's house, which happens to be the defendant's father's. She says she's not sleeping there. Excuse me, she's sleeping there. She's not sleeping at Main Street. Her personal belongings are present at Center Street. I don't see her personal belongings over at Main Street. She's eating at Center Street. So she's corroborating what the defendant had testified to about her contacts with Center Street. We also brought in the daughter of the ex-husband, Lacey Mendoni, and Lacey Mendoni testified, I live with my father at Main Street along with my brother and sister. And she was asked, does the defendant sleep there? Does she reside there? No, she doesn't. So we've got people present at both homes that can testify, Center Street, the girlfriend of the father, that this is where she resides. This is where her home is. And over at Main Street, we have a daughter of the ex-husband saying she's an adult. No, she doesn't. She doesn't sleep here. She doesn't live here. The plaintiff doesn't testify in the case, and so we never really found out what rationale they came up with as to why they chose Main Street over Center Street. But we do know that they tried to serve her at what they thought was her place of employment. And on the night that they attempted to serve her there, they were told she doesn't work here. She works at a place in Mendota. They were trying to serve her in LaSalle. And then after that, the process server then went to the Main Street residence and tried the substitute service at the Main Street residence. But initially, they tried to serve her personally at the wrong place of employment. The court ruled against the manifest weight of the evidence. The court ruled against the very evidence it found credible, being the testimony of the defendant, as well as the documentary testimony that was offered that the court also found to be very credible. I just would like to briefly also address the other issue that's present in the case, the failure to issue summons to each defendant in this case, being the defendant individually, which was issued, but then also to the defendant as executor of the estate of her mother. And the plaintiff heavily resides on a 1954 case, Wessel v. Ellenberger, that was decided long before our present Supreme Court Rule 101. The 1954 Supreme Court Rule 4 that was governing in Wessel v. Ellenberger says that summons shall be issued directed to the defendant or defendants. This is to be contrasted with Supreme Court Rule 101 that says that the summons should be issued to each defendant. To each defendant, it's much more stringent. It's much more directive than what the lax rule of Supreme Court rule. But further, Supreme Court Rule 4, as does Supreme Court 101, provides a sample form for summons. And in Supreme Court Rule 4, it directs you to look at the caption. And in looking at the caption, they talk about how you can cure the problem. In our Supreme Court Rule 101, there's no directive to the defendant to look at the caption. You look at who's named, but there's no directive to look above. And so in this case of Wessel's, the parties, the defendants, had appeared in the case, volunteered, participated in the case. Then there was a substitution of executor. And after participating in the case and participating in the hearings, they turn around and say, wait a minute, we weren't served properly. That wouldn't be equitable at that point, to participate in the case, to be a part of the case, and then turn around and say, wait a minute, you didn't serve us properly. So the court says that you look at the circumstances. In certain circumstances, in the circumstances in Wessel's, yes, they indicated it was cured. But there are circumstances, and it doesn't say that you're always going to cure it by looking at the other parts, the summons, the complaint, things such as that. You have to look at the circumstances. In Wessel's, the defendants had their day in court. They participated. In the case at hand, there wasn't a day in court. The defendant testified, she didn't know about it. And she didn't answer or appear. She never had her day in court. Very distinguishable from what happened in the Supreme Court cases. A lot of Wessel's, that was also pre-Supreme Court 101 back in 1954, which had a different standard in issuing summons. Thank you. Okay. Thank you, Mr. Fairley. And Mr. McClintock. Your honors, counsel. Let me start by saying that there's very little that counsel and I can agree on in this particular case. We don't agree on what facts were presented to the trial court. We don't agree on what the record says. We don't agree on the credibility of the witnesses. And initially, I wasn't sure that we didn't even agree on the standard of review. Because in his brief, he says it's de novo review. Today, he's arguing manifest way to the evidence. Actually, I think when the court makes a determination of fact, and when you decide, is this someone's abode? That's a determination of fact. You have to assess credibility. In those situations, I think that the Smith v. Air Room case controls. It's actually a denial of a motion to vacate, a default judgment. And that's going to be set aside only where there's an abuse of discretion. So I would say that that is the standard. And the judge didn't have to make assessments of fact and make findings of fact. And he had to make credibility issues. And contrary to what counsel says in the record, if you look at the report of proceedings, the third volume, pages 85 through 89, the court goes on to describe the witnesses that the defendant presented. And he used words like their testimony was incredulous, not worthy of belief, not credible. So that was his assessment of their witnesses. So I think what this court has to decide is, did Judge Heddle abuse his discretion in finding that the defendant failed to meet her burden? It was her burden to show that that place where there was substitute service was not her abode, her usual place of abode. Now, there was evidence introduced on both sides that the court had to weigh. But in support of Judge Heddle's position, I mean, there was a pyramid of evidence. For instance, when the private processor went there, he talked to the resident. And the resident confirmed that he was the spouse and that she lived there. She just happened to be at work. The reality is she had custody of her children and her children lived at that Main Street address. When she moved to Main Street, she met with the landlord with her estranged husband, ex-husband, and all the children. And she told him, yeah, we're all moving in here together. She signed the lease. She paid the rent on the Main Street property. She became the executor of her mother's estate. She filed court documents as to where she should receive notice of issues in the probate. Guess what she used as her mailing address there? The Main Street address. When she moved from Main Street in February of 2011, she went to the U.S. Postal Service and filled out a change of address, forwarding her mail from Main Street to a new address. The landlord testified in this case that over the course of the period of time that they were there, he visited those properties at least 20 times for repairs and other reasons. Every time he was there, she was there. Her stuff was there. He said, she's living there. He believed that she was living there. What we need to show, I think, is was there a significant and persistent contact with this Main Street address? Now, the trial court answered that in the affirmative. The trial court also noted that there was another related lawsuit filed. And in that lawsuit, the defendant was personally served by the process server. You know where he found her? He found her in Main Street and personally served her there. But that's a different standard than the Postal Service. It is. But my point is, that's where they found her. That's where she was at the time they were looking to serve her. She was on Main Street and she happened to answer the door and she got personal service. Now, that case, the subject premises in the suit to quiet title, which is the abode service, the reason that this whole default order has become very important, the reason, the motivation, in my opinion, is to vacate that order, is because in the interim, the premises that are the subject matter of the suit to quiet title where the abode service exists, they're burned to the ground, right? The title to that real estate is in one name, the insurance policy ownership is in another part. So, there's a conflict. If you look at my brief on page 18 of the abstract, you're going to see 77,000 reasons why there's motivation to undo that default judgment, which best title in my client to that real estate, which subsequently burns. So, the court finds it is her abode service, and the standard there is, is that a place where she's reasonably likely to be provided notice? That's the standard. And it's also significant that in this case, plaintiff's former counsel, his statement was read into the record without objection, and plaintiff's former counsel said, I had the default order. She acknowledged the lawsuit. She knew about the lawsuit. She was upset about it. She ringed me about it. And that's the record. That's what's in the record. Now, in answer to your question, can a person have more than one abode? There's a case out there, people be Price, and that answers that in the affirmative. Yes, you can have more than one abode. And that's cited in the brief. But I would submit to the court, it's not an easy thing to do. You really, really have to work on establishing more than one place of abode. And why would you want to do that? Well, I think there's some reasons. There's some advantage to it. How about an income tax time? You may want to pick a location where you can establish your status as the head of a household, for instance. Or how about if you're applying for a student loan? She was going back to school at this particular time. Whether you're eligible for loans or not depends on whether you're living with somebody else, what income is coming into the household, for instance. Or how about if you just want to evade service? How about that? I mean, that would be a good reason to have more than one abode. And that's kind of what was going on in this case. Because when it's to her advantage to say that she's living on Center Street, she says she lives on Center Street. And when it's to her advantage to say that she's living on Main Street, then she's living on Main Street. When we say she's living on Main Street, she says she's living on Center Street. Let me say briefly about the summons issue. Councilman Red Herring, this is certainly Red Herring. If you look on page six of the abstract, there is a copy of the summons there. And the portion to which he's referring is about in the middle where it says to, which is like who you deliver the summons to. At the caption on the top of the summons, the defendant is disclosed in her individual capacity and her capacity as executive. Attached to that summon is a complaint. The caption on the complaint lists her as an executor, lists her individually. In the complaint that's attached, there are separate counts of action. Each has a different cause of action in it. Some are against her individually, and some are against her as the executor. Now, there's a long line of cases, and I've cited them in my brief, Sideway, Chester, Public Taxi, Charter Bank. They all hold that technical irregularities do not render service improper, and those involve incorrect names, misspelled names, incorrect capacities. And I would submit that that is, in fact, on point. There, the summons didn't disclose the dual capacities, but the complaint did. The court said that the information in the complaint would cure any defect. So the standard of finding a proper service that's against the contrary is the manifest weight of evidence. That's the Four Lakes case, and I say that's the standard for that issue. And lastly, and more importantly, if the defendant really believed that we needed to serve her with two summons, which in my opinion is redundant, when she filed her answer in that case, did she file two answers? One as an individual and one as an executor? No. She filed one answer, and she paid one appearance fee. So how could she come into court now and say, I should have had two summons? His argument would be a lot stronger if he would have paid two appearance fees, and he didn't do that. So for all those reasons, I'm asking that this court affirm the ruling of Judge Heddle. And I'd be happy to answer any questions if you have any. Okay. Thank you, Arnie. Thank you very much, Mr. McClintock. And Mr. Biederman, any rebuttal? Mr. McClintock raised the credibility of the witnesses. I think Judge Heddle spoke to the credibility of the witnesses, and he found the defendant very credible. There are some witnesses that he said that he didn't find credible, but it wasn't the defendant. He said she was credible, and also her documentary evidence was credible. I think where the case goes awry is where the judge comes up with a different standard, where you can be found. And we're not denying that she had these contacts with Main Street, but they didn't rise to the level of usual place of a boat. And as far as him talking about, you know, tax time, and well, you want to be ahead of a household, and you want to go get loans, and you've done to all these things, you may not have to be this really bad person. There's no evidence of anything like that. In fact, the judge finds her the most credible person to testify in the whole case. And I know that his client didn't have to testify, but we don't know what their rationale was of why, you know, why they necessarily went there. Everything is post after the service, after the case, we find out all these reasons. As far as the testimony wasn't that she went, she accompanied her ex-husband with the landlord. Her ex-husband did the talking. She was there. But the judge said, hey, you know, I feel comfortable with what she did about renting this place, and paying the rent, and signing the lease, because the guy couldn't get a lease. And she worked nights, and the kids stayed with her husband. And they got along. That's not bad. They got along. And she would go there regularly to see her kids. There's nothing wrong with that. But she slept at her, at Center Street. That's where her dad lived. That's where she lived with her dad. In fact, there's testimony that when her dad lived at another residence, like four or five years before that, when he moved to Center Street, she moved with him. So she'd been with him for a lot of years, for a long time. As far as the evidence that you look at here that's presented, I think it's very substantial. It's quite cumulative. And it's been existing over a long period of time. You don't have a driver's license for 10 years, because you're trying to create some kind of conspiracy that now you're going to use Center Street. But then somewhere down the road, you're going to say that you're using Main Street. I mean, she kept her driver's license at Center Street. She kept her voter's registration card. If you're going to have a process survey, you want to check and see where somebody's living, there's some public documents you can go check. And when she paid the rent, she always paid it with her check. And her check said Center Street. He talks about using mailing addresses in the probate file. Yes, she did. She used a mailing address, but she has importantly distinguished her mailing address in the very probate file in other forms, saying what is her residence. And she used Center Street. She didn't use Main Street. The change of address at the mail, there she was changing a mailing address that she was using for estate purposes back to her address at Center Street. There was some confusion about getting her mail. It happened to be that her father's place where she lived on Center Street was just a couple of places away, a couple doors away from where her mother's home was on Center Street. She wasn't getting the mail. And so she felt the best thing to do was to use the place where she felt more secure about having the estate mail. Was that after the case was filed? When did she do that? In the chronology? I can't tell you exactly, but I believe it was some time ago. I mean, it was before we ever went to court on the matter, before we had hearings on the matter. I mean, she, in the probate file, there was an issue. They talked about her being served another time at Main Street. The plaintiff attempted, even though the defendant was named as the executor of her mother's will, the plaintiff had attempted to go to court and open an estate and have herself appointed as the administrator of the executor, contrary to what her mother's will said. And the defendant calls up the attorney who was handling it, Attorney Fisher, who his affidavit was submitted, and he had a scheduling conflict, and that was the best way to get through it. And we stipulated his what was contained with it, but we agreed that's what he would testify to. And she testified, the defendant testifies, and I called him up. But I call him up about what are you trying to do in getting my sister appointed as the executor-administrator of the estate when my mother's will says I'm the executor or the administrator of the estate. She admits to the conversation with him, but she's saying not about this case, but about the other issues were there. So as I said, the court used the wrong standard. The court, we believe if we looked at it from the usual place of the boat of these continuous intimate contacts, it would have decided and should have decided differently based on the evidence. And also in respect to the summons, the issuance of the summons, I think you get a look at the Supreme Court rule and you look at the directives on the form of the substance, and those summons back in 1954 was directing the defendant when you got your summons, look at the caption above. Look at the caption above. In our present form of substance, you're not referring to any other caption. Now, she's got obligations as executor of that estate. There's money there. There's bills to be paid. She wants to clear her mother's name and get those bills paid. And that's her big motive. There's funeral bills and there's state of the art royalties and things such as that. They want to talk about what's her motives. There's nothing wrong with that. But that's irrespective of her motives. The fact of it is they weren't properly served. The fact of it was it's against the manifest way to the evidence for the judge to have ruled that the usual place of a boat was Main Street when in fact all the credible evidence that the judge commented on and made a very favorable comment was Center Street. Thank you. Thank you. And thank you both for your argument today. We will take this matter under advisement and get back to you with a written disposition within a short time.